**Peter FRIED, Plaintiff,**

**v.**

**Martin FRIED, Garden State Tanning Co., div. of Walter Kidde Inc., State Street Union National Bank, and National Westminster Bank, Defendants.**

**No. 86 Civ. 6622 (GLG).**

United States District Court,
S.D. New York.

Nov. 14, 1986.

**104**

Howard Eisenberg, New York City, for plaintiff.

Rosen Rudd Felzen Siskind & Hollender, New York City, for defendants Martin Fried and Garden State Tanning Co.; Steven L. Siskind, of counsel.

Leon P. Ciferni, New York City, for defendant Nat. Westminster Bank.

GOETTEL, District Judge:

This action trails a sad history of bitter disputes and adversarial proceedings between the plaintiff, Peter Fried, and his father, defendant Martin Fried. This domestic dispute has now descended on the federal courts. Defendants Martin Fried and Garden State Tanning Co. now move to dismiss the plaintiff's complaint in its entirety on grounds of *res judicata* and lack of subject matter jurisdiction.[1]

*Background*

In approximately 1971, Martin Fried had his son, Peter, committed to an institution. According to the father, this was for treatment of the son's drug addiction. The son, however, claims he was committed to a mental institution.[2] This all occurred when Peter was a teenager. Although Peter is now over thirty years old, with a wife and several children, he has continually asserted that his father is responsible for his financial support, as well as that of his wife and children. This contention is ap-

parently based on the belief that, by virtue of his father having had him committed to an institution when he was a minor, Peter has been rendered permanently "disabled."

Martin Fried has apparently provided his son with substantial financial assistance. At some point, Peter was employed by defendant Garden State Tanning Co., of which Martin Fried is the president. That employment was terminated in or about 1984, for reasons not known to this Court. Nevertheless, Peter continued to visit his father's place of business and cause unwanted disturbances. In 1984, Martin Fried sought an order of protection from his son's acts in a proceeding in New York State Family Court. An order of protection was ultimately entered by that court. Peter claims that the state court procedures that culminated in the order of protection were unconstitutional. However, the constitutionality of the procedures was upheld by the New York court, and no appeal has been taken from that ruling.

The action now before this Court adds an additional twist to the stormy family struggle described above. In July and August 1986, several checks totalling over $100,000 were drawn on the account of Garden State Tanning Co. and made payable to Peter Fried. These checks were deposited into the plaintiff's account with National Westminster Bank. Martin Fried asserts that Peter stole blank company checks and forged the signatures of two authorized signatories for the corporation. At the request of State Street Bank and Trust Co.,[3] the corporation's bank, the sum of approximately $60,000 is being held by defendant National Westminster Bank while the ques-

1. Defendant National Westminster Bank joins in the instant motion to dismiss the complaint against all defendants. Affidavit of Joseph C. Pelaia, Oct. 17, 1986, ¶ 5. It is not clear whether the fourth defendant, State Street Union National Bank (an out-of-state bank), *see infra* note 3, has been served or is susceptible to the jurisdiction of this Court.

2. Peter Fried subsequently brought an action against his father in state court claiming that the procedures used to have him committed were unconstitutional. He has apparently made similar, unsuccessful accusations in other state suits.

3. State Street Bank and Trust Co. was incorrectly named in the complaint as State Street Union National Bank.

tion of the forged checks is being investigated.[4]

On August 26, 1986, the plaintiff, through counsel, commenced this action against his father, his father's company, and both banks. By order to show cause, the plaintiff sought to restrain the defendants from "freezing" his bank account.[5] This Court declined to grant the relief requested. Plaintiff's counsel then sought to bring on a motion, again by order to show cause, "why summary judgment should not be granted due to unclean hands of defendant." On September 22, 1986, we denied this application as procedurally improper and totally lacking in merit. We also noted that federal jurisdiction over this action was highly dubious. We cautioned that any further similar submissions would result in the imposition of Rule 11 sanctions against plaintiff's counsel. Plaintiff's counsel promptly moved to reargue, contending that,

> (1) the actions heretofore threatened and attempted by Martin Fried, against plaintiff, Peter Fried, are subject to grave doubt as to their legality under the Constitution and Laws of the United States of America and; (2) that such vexatious actions taken by defendant Martin Fried, and his threat to do so, would result in great injury to the public and to plaintiff Peter Fried.

Motion to Reargue at 1.

The motion to reargue was made returnable on October 17, 1986, one of this Court's regularly scheduled days for hearing motions. As noted in the published procedures of this Court, however, motions to reargue are not heard orally. Indeed, under the local rules, no response to such a motion is required until the motion to reargue is granted. Rules of the United States District Courts for the Southern and Eastern Districts of New York, Civil Rule 3(j). Here, however, defendants Martin Fried and Garden State Tanning Co. cross-moved

to dismiss the complaint, making their cross-motion returnable on October 17. On that date, defendants' counsel appeared for oral argument; plaintiff's counsel did not. Since the defendants' cross-motion sought to dismiss the action and had been served just seven days before the return date, we advised plaintiff's counsel, by telephone, that he would have an additional week to file opposition to the cross-motion. The plaintiff filed such papers the following week.

In opposing defendants' motion to dismiss, plaintiff's counsel contends that, on October 17, this Court conducted an *ex parte* hearing, at which plaintiff requested and was refused five minutes of oral argument, thus depriving the plaintiff of due process. Consequently, the plaintiff "demands constitutional right to five minute oral argument before adjudication of defendants [sic] cross motion to dismiss and plaintiff's motion to reargue." Plaintiff's Amended Answer to Defendants [sic] Cross-Motion to Dismiss at 2. The plaintiff then states that, if he is not granted five minutes of oral argument, he "will seek mandamus compelling the same." *Id.* In addition, the plaintiff again moves for summary judgment "due to unclear hands of defendant," demands a "fair due process hearing on all matters herein stated," and seeks mandamus compelling the Court to "hear plaintiff's complaint as mandated by law and [not] continue to hold ex parte proceedings." *Id.* at 2–3.

### Discussion

■ Taking the matters in the order in which they were filed, the motion for reargument must be denied. The motion is largely incomprehensible. To the extent that any of plaintiff's arguments are understandable, they are frivolous. Furthermore, the local rules of this district require

---

4. Apparently, at least one check cleared before the purported forgery was discovered. Thus, the full amount allegedly stolen could not be held.

5. Actually, the plaintiff's entire account is not frozen. Rather, the company's bank will not release funds to pay plaintiff's bank for the checks that plaintiff allegedly forged. Consequently, plaintiff cannot draw against these funds.

that a motion for reargument be accompanied by a memorandum setting forth "the matters or controlling decisions which counsel believes the court has overlooked." Rules of the United States District Court for the Southern and Eastern Districts of New York, Civil Rule 3(j). Plaintiff has submitted no memorandum in support of his motion or otherwise presented any matters previously overlooked by this Court. Consequently, plaintiff's motion to reargue is denied.

■ Defendants' cross-motion to dismiss must be granted. The complaint professes to state a claim that "arises under the Constitution, Laws and Treaties of the United States of America and 1331(a) USC 28." [6] The only such claim asserted is the constitutional attack on the state court procedures by which defendant Martin Fried obtained an order of protection against Peter Fried. This claim provides no basis for an action against the other three defendants.[7] Moreover, plaintiff's purported constitutional claim is bizarre, to say the least. Even accepting, as we must on a motion to dismiss, that the plaintiff's father had him committed to a mental institution fifteen years ago when he was a minor, we cannot infer that the father is, therefore, perpetually responsible for his son's financial support, as well that of his son's family.[8] No court has ever ordered such relief. Indeed, it may be the state court's refusal to so

require that prompts the plaintiff to assert that the state proceedings violated his constitutional rights.

The plaintiff has already attempted to bring his claim of unconstitutional state procedures to federal court. In January 1985, Peter Fried, acting *pro se*, filed a petition in this district to remove to federal court the state action in which his father sought an order of protection. In his removal petition, Peter claimed that constitutional infirmities in several state statutes created federal jurisdiction. On motion by the father, Judge Keenan remanded that action to the New York State Family Court. Peter Fried has not appealed Judge Keenan's order remanding that case, or the Family Court's decision that the state statutes and proceedings are constitutional. Consequently, the plaintiff is barred by *res judicata* from relitigating the same claim. There being no other basis for jurisdiction in this Court over plaintiff's claims against these defendants, the motion to dismiss must be, and is, granted.[9]

■ This leaves only the defendants' request for sanctions against the plaintiff and his counsel for bringing a totally meritless action and repeatedly filing unwarranted motions despite our warning that sanctions would be imposed. In considering this motion, we start by noting that our Court of Appeals seems strongly opposed

6. We assume the plaintiff is invoking federal question jurisdiction under 28 U.S.C. § 1331, although that statute has no subsection (a). No diversity jurisdiction exists under 28 U.S.C. § 1332(a), because both the plaintiff and three of the four named defendants are citizens of New York. The complaint starts by announcing "NOTICE OF 2240 USC 28 APPLICABILITY HEREIN IS HEREBY MADE." Title 28 U.S.C. has no section 2240. However, since the "Wherefore" clause refers to "deprivation of due process and equal protection of law," we assume that, at least as to the suit against his father, plaintiff may mean this to be a civil rights action.

7. The complaint states that the other defendants "are included ... only to the extent that they are preventing plaintiff from obtaining a certain sum of money which is owed to plaintiff by defendant Martin Fried...." Complaint at 1–2.

8. Moreover, assuming, *arguendo*, that Martin Fried has some financial obligation to his son, this would not justify Peter's alleged theft and forgery of checks from his father's business.

9. We must briefly address the plaintiff's demand for his "constitutional right to five minute oral argument" and mandamus to bar this Court from conducting *ex parte* proceedings. The Constitution provides no right to oral argument. Indeed, some judges decline to hear oral argument on any motions, much less motions to reargue. As to *ex parte* proceedings, there have been none. The case was called on the October 17th motion calendar in open court because a cross-motion to dismiss had been filed in response to plaintiff's motion to reargue. The plaintiff's counsel was not present. He was fortunate not to have had the cross-motion granted on default.

to district judges imposing sanctions.[10] *See Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir.1986); *Kamen v. American Telephone & Telegraph Co.*, 791 F.2d 1006 (2d Cir.1986). Curiously, however, in several cases in which the district court declined to impose sanctions, the Second Circuit found them warranted.[11] *See Norris v. Grosvenor Marketing Ltd.*, 803 F.2d 1281 (2d Cir.1986); *Eastway Construction Corp. v. City of New York*, 762 F.2d 243 (2d Cir. 1985). In this suit, the actions of the plaintiff and his counsel compel the Court to grant the defendants' application for sanctions.

> Under Rule 11,
>
> [t]he signature of an attorney ... constitutes a certificate by him that he has read the pleading, motion or other paper [and that,] *to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact* and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass....

Fed.R.Civ.P. 11 (emphasis added). We fail to see how the complaint in this case could ever have been thought to state a viable federal cause of action. The only federal claim against any defendant has already been brought to federal court, remanded to state court, conclusively decided, and not appealed. Moreover, the motions filed by plaintiff's counsel, usually by order to show cause, were frivolous, and appear primarily intended to harass. Finally, the statement made in an affidavit by plaintiff's counsel, Howard Eisenberg, that the Court allowed defendants to present oral argument on October 17, and refused his request for a five minute oral argument, is patently false. Plaintiff's counsel was not even present to make such a request, so that his accusation regarding what occurred that day is certainly not well grounded in fact. All of these actions clearly warrant Rule 11 sanctions at a minimum.

In assessing Rule 11 sanctions, we note that these may be charged to the plaintiff as well as his counsel. Rule 11 provides as follows:

> If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, *shall impose upon the person who signed it, a represented party, or both,* an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Fed.R.Civ.P. 11 (emphasis added). The plaintiff's claims are frivolous and unreasonable and had "absolutely no chance of success." *Eastway Construction Corp. v. City of New York, supra*, 762 F.2d at 254. The plaintiff is not relieved of personal liability for pursuing these baseless claims, even if he acted on his counsel's advice. *See Davidson v. Keenan*, 740 F.2d 129, 132–33 (2d Cir.1984). Thus, it is within this Court's discretion to impose sanctions, including attorneys' fees, on the plaintiff,[12]

---

**10.** Because of the Second Circuit's apparent dislike for such relief, we declined awarding sanctions in another recent case, *Richter v. Russo*, 647 F.Supp. 565 (S.D.N.Y.1986). We noted, however, that the action had been commenced without any valid basis, in the total absence of federal jurisdiction, and had been litigated in an improper fashion. In so stating, we fully expected an appeal would be taken, and, indeed, invited one. However, the prevailing party seems not to have chosen to appeal the denial of sanctions.

**11.** We recognize that this dichotomy may be due to philosophical differences among appellate judges, rather than perverseness. For example, Judge Pratt opposed sanctions in both *Kamen* and *Oliveri*, while Judge Kearse supported them in *Norris* and in dissent in *Kamen*.

**12.** Although the pleadings and motions in this action were signed by plaintiff's counsel, Peter Fried signed an affidavit "IN SUPPORT OF COMPLAINT," in which he embellishes his claims of deprivation of due process allegedly caused by his father's use of state court proceedings against Peter. As we understand the Second Circuit's recent discussion of Rule 11 sanctions, once Rule 11 has been violated, sanctions may be imposed upon a party bringing a meritless lawsuit even if all pleadings, motions, or

his counsel, or both. *See Oliveri v. Thompson, supra,* at 1274.

Were alternative grounds necessary for assessing attorneys' fees, we would be prepared to make such an award pursuant to the Court's inherent power, *see id.,* at 1271–72, because the facts discussed above convince us that the plaintiff's claims are entirely without color and were brought in bad faith, for reasons of harassment. "An inherent power award may be imposed either for commencing or for continuing an action in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 1272. This award may be against the losing party or his attorney. *Id.* at 1271–72.

■ We also find sanctions against plaintiff's counsel appropriate under 28 U.S.C. § 1927. Plaintiff's counsel unreasonably and vexatiously multiplied these proceedings and delayed resolution of the action by repeatedly filing unwarranted motions. Accordingly, counsel should bear his adversaries' costs in opposing those motions.

### Conclusion

Plaintiff's motion to reargue is denied. Defendants' cross-motion to dismiss the entire complaint is granted. Defendants' request for sanctions is granted. Counsel for the defendants may submit evidence supporting their claims for reasonable expenses, including reasonable attorneys' fees, after which a hearing will be held, if requested, concerning the amount of the award or any apportionment thereof between the plaintiff and his counsel.

SO ORDERED.

other papers are signed only by counsel. *Oli-*   *veri v. Thompson, supra,* at 1273–75.