**OFFICIAL PUBLICATIONS, INC., Plaintiff,**

v.

**KABLE NEWS COMPANY, INC., Daniel Friedman, and Alfred W. Holpp, Jr., Defendants.**

**No. 85 Civ. 1464 (DNE).**

United States District Court, S.D. New York.

Aug. 4, 1988.

Certilman Haft Lebow Balin Buckley & Kremer, Barry I. Fredericks and Penny P. Domow, New York City, of counsel, for plaintiff.

Jacobs Persinger & Parker, I. Michael Bayda and William W. Lasher, New York City, of counsel, for defendants.

## OPINION AND ORDER

EDELSTEIN, District Judge:

Defendants, Kable News Company, Inc. ("Kable"), Daniel Friedman and Alfred W.

Holpp, Jr., have moved this court, pursuant to Federal Rules of Civil Procedure 12(c) and 56(b), for summary judgment on the grounds that: (1) the Court lacks jurisdiction over the subject matter of this action; (2) the First, Second, Third, Fifth, Eighth, Ninth, Tenth, Eleventh, Twelfth and Thirteenth Causes of Action in the amended complaint fail to state claims upon which relief can be granted; (3) plaintiff lacks standing to assert the fifth cause of action; (4) the claims alleged are barred, in part, by the applicable statutes of limitation; (5) the First, Second, Third and Fourth causes of action are barred by the principle of account stated; and (6) there is no genuine issue as to any material facts and defendants are entitled to a judgment as a matter of law. Defendants also move, pursuant to Federal Rule of Civil Procedure 11, for plaintiff to reimburse defendants for the expenses and reasonable attorneys' fees incurred in defending this action, on the grounds that the action is not well grounded in fact or warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.

Whereas the court lacks subject matter jurisdiction over this controversy, the remaining motions need not be considered.

### Background

Plaintiff, Official Publications, Inc. ("Official"), publishes various magazines for distribution and sale in the United States and abroad. Defendant Kable distributes magazines and books to foreign and domestic wholesalers. Defendants Daniel Friedman and Alfred W. Holpp, Jr., are Kable's principal officers.

From June, 1961 through July, 1980, Official and Kable entered a series of distribution agreements, pursuant to which Kable bought magazines from Official. Kable then sold these magazines to wholesalers at a specified discount below the retail price of each magazine. The distribution agreements entitled certain wholesalers to greater discounts than others because the high price of labor in their region increased their business costs. Each month, Kable sent to Official a settlement statement listing the total amount of all discounts that Kable granted to wholesalers.

Official alleges that from 1973 through 1983, Kable violated the distribution agreements by granting excess discounts to certain wholesalers. Official further alleges that Kable charged such discounts to Official's account, thereby reducing Official's profits. Official claims it first became aware of these excess discounts in 1983 after Kable voluntarily changed the format of its settlement statements to itemize the discounts granted to each wholesaler.

The amended complaint alleges claims under breach of contract, common law fraud, the Robinson–Patman Act; 15 U.S.C. § 13(a), (d), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, the Mail Fraud Act, 18 U.S.C. § 1341, and the Wire Fraud Act, 18 U.S.C. § 1343. Official bases jurisdiction on diversity of citizenship, 28 U.S.C. § 1332, and federal question jurisdiction, 28 U.S.C. § 1331. Defendants' motion to dismiss for lack of subject matter jurisdiction claims that: (1) diversity jurisdiction does not exist; and (2) Official has not stated a viable cause of action pursuant to any of the four federal statutes listed above, thereby defeating federal question jurisdiction. Accordingly, defendants seek an order dismissing the amended complaint.

For the following reasons, defendants' motions to dismiss and for Rule 11 sanctions are granted.

### I. Diversity

28 U.S.C. § 1332(a) states, in relevant part:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the value of $10,000, exclusive of costs and interests, and is between—
>
> (1) Citizens of different states.

Official claims that this court has jurisdiction over the instant action pursuant to 28 U.S.C. § 1332, because the controversy is between citizens of different states and the amount in controversy exceeds $10,000.

It is well-settled that diversity jurisdiction exists only when there is complete

diversity, i.e., all plaintiffs have their domiciles in different states than all defendants. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). A corporation is a citizen of its state of incorporation and the state in which it operates its principal place of business. 28 U.S.C. § 1332(c). Official alleges that New York is both its state of incorporation and principal place of business. Amended Complaint, ¶ 1. Clearly, Official is a New York citizen.

Official contends that complete diversity exists because Kable "is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at Mount Morris, Illinois...." Amended Complaint, ¶ 2. Kable, however, contends that it was incorporated under the laws of Illinois, Holpp Affidavit, ¶ 2, and that its principal place of business is in New York. If Kable's principal place of business is New York, complete diversity would not exist.

■ This court, however, need not address the issue of Kable's citizenship. Defendant Friedman avers he is a New York domiciliary. Affidavit of Daniel Friedman, ¶ 1. None of Official's motion papers challenge the assertion that Friedman is a New York domiciliary. Thus, plaintiff and at least one defendant are a New York domiciliary, regardless of the location of Kable's principal place of business. Accordingly, complete diversity is destroyed and this court has no jurisdiction pursuant to 28 U.S.C. § 1332.

## II. Federal Question

Because diversity jurisdiction does not exist, this court can only hear the instant action if it arises "under the Constitution laws or treaties of the United States."[1] 28 U.S.C. § 1331. Official contends that four of its claims arise under federal law: (1) The Mail Fraud Act; (2) the Wire Fraud Act; (3) the Robinson–Patman Act; and (4) RICO. Each of these claims is considered below.

### a. *Mail Fraud Act and Wire Fraud Act*

■ Official contends that this court has federal question jurisdiction pursuant to the Mail Fraud Act, 18 U.S.C. § 1341, and the Wire Fraud Act, 18 U.S.C. § 1343. The district courts have original jurisdiction over both federal criminal prosecutions, 18 U.S.C. § 3231, and civil actions brought under statutes that specifically confer jurisdiction upon the district courts. While RICO, 18 U.S.C. § 1964(c), allows a private plaintiff to seek civil remedies in the district courts, the Mail Fraud and Wire Fraud Acts do not. *Napper v. Anderson, Henley, Shields, Bradford & Pritchard,* 500 F.2d 634, 636 (5th Cir.1974), *cert. denied,* 423 U.S. 837, 96 S.Ct. 65, 46 L.Ed.2d 56 (1975); *Milburn v. Blackfrica Promotions,* 392 F.Supp. 434, 435 (S.D.N.Y. 1974). This court, therefore, may not hear this case pursuant to the Mail Fraud Act or the Wire Fraud Act.

### b. *Robinson–Patman Act*

The fifth claim in the amended complaint alleges that Kable violated the Robinson–Patman Act, 15 U.S.C. § 13(a) and (d). The Robinson–Patman Act, which amended § 4 of the Clayton Act, deals with the problem of price discrimination between customers of the same seller. H.R.Rep. No. 2287, Pt. 1, 74th Cong., 2d Sess. 7 (1936). Official alleges Kable discriminated among the wholesalers that purchased Official's magazines from Kable by granting certain wholesalers greater discounts than those allowed by the distribution agreements. Further, Official alleges that it received lower profits on magazine sales to Kable in the amount of such excess discounts. Defendants argue, however, that the fifth cause of action must be dismissed because, *inter alia,* Official has not sustained an antitrust injury.

### 1. Standing to Sue and Antitrust Injury

■ In *Associated General Contractors of California, Inc. v. California State*

---

**1.** Because this court has dismissed the federal claims, only Official's state law claims of common law fraud and breach of contract remain. This court declines to retain pendant jurisdiction over the state law claims, pursuant to *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

*Council of Carpenters, et al.,* 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983), the Supreme Court addressed the issue of standing to sue under § 4 of the Clayton Act. The plaintiff Union and defendant Associated General, a multiemployer association of contractors, had entered into a series of collective bargaining agreements governing employment conditions. The Union represented the employees of Associated General in construction-related industries in California. The Union alleged that Associated General, in violation of the antitrust laws, coerced certain third parties and some of its own members to enter into business relationships with non-Union contractors and subcontractors. This activity allegedly restricted the trade of certain unionized firms and restrained the Union's business activities.

The Court concluded that the Union had not been injured by a violation of the antitrust laws. Justice Stevens, writing for the Court, stated that there was no clear-cut test available to determine what constitutes an antitrust injury: "[T]he infinite variety of claims that may arise make it virtually impossible to announce a black-letter rule that will dictate the result in every case." *Associated General, supra,* 459 U.S. at 536, 103 S.Ct. at 908; *see, Crimpers Promotions, Inc. v. Home Box Office, Inc.,* 724 F.2d 290, 295–96 (2d Cir.1983), *cert. denied,* 467 U.S. 1252, 104 S.Ct. 3536, 82 L.Ed.2d 841 (1984). The Court then identified the factors used to determine whether an injury is compensable under the antitrust laws.

The first factor is "the nature of the alleged injury." *Associated General, supra,* 459 U.S. at 538, 103 S.Ct. at 908. Justice Stevens noted that Supreme Court cases prior to *Associated General* had "emphasized the central interest in protecting the economic freedom of participants in the relevant industry." *Id.* The Union was neither a consumer nor a competitor in the market in which trade was restrained. *Id.* The Union did not allege any market-wide output reduction or price enhancement, claiming that Associated General's predatory behavior was directed only at "certain parties." *Associated General,* 459 U.S. at 539 n. 40, 103 S.Ct. at 909 n. 40.

Official's complaint is similarly deficient. Official, a publisher, was neither a competitor nor a consumer in the wholesale market in which trade was allegedly restrained. Official does not allege a marketwide restraint of trade, claiming only that Kable's alleged price discrimination was directed at certain wholesalers. If Kable wrongly deprived Official of profits, it was not a restraint on Official's economic freedom that caused such deprivation.

A second factor is the directness or indirectness of the alleged injury. *Associated General, supra,* 459 U.S. at 540, 103 S.Ct. at 909–10. In *Blue Shield of Virginia v. McCready,* 457 U.S. 465, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982), the Court stated that when determining whether a particular injury is too remote to warrant § 4 standing, two factors should be considered: (1) the physical and economic nexus between the alleged violation and the harm to the plaintiff, and (2), more particularly, the relationship of the injury alleged with those forms of injury about which Congress was likely to have been concerned in making defendant's conduct unlawful and in providing a private remedy under § 4. *Id.* at 466, 102 S.Ct. at 2541–42.

Any physical or economic nexus between Official and Kable arises solely from the distribution agreements. Without these agreements, one party's actions would have little or no effect on the other. Further, Official's alleged injury resulted from a breach of the distribution agreements, not a breakdown in competitive conditions in the magazine publishing market. Therefore, Official's injury is, at most, an indirect consequence of Kable's alleged violations of the Robinson–Patman Act.

A third factor is whether an identifiable class of injured persons exists whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement. *Associated General, supra,* 459 U.S. at 542, 103 S.Ct. at 910–11. If such a class exists in the instant case, it would be the disfavored wholesalers who did not receive the excess discounts from

Kable. Official is not a member of that class.

A fourth factor is whether the damages sought are speculative. *Associated General, supra,* 459 U.S. at 542, 103 S.Ct. at 910–11. Official may be able to calculate the precise amount of any discounts Kable allegedly improperly charged to Official's account. Such improper charges, however, simply violate the distribution agreements between Official and Kable; they do not reflect the extent to which Kable restrained trade in the magazine publishing market. Since these improper charges are the only antitrust injury Official alleges, any damages resulting from Kable's violations of the Robinson–Patman Act would be highly speculative.

A final factor is whether there may be a double recovery for the same injury. *Associated General, supra,* 459 U.S. at 543–44, 103 S.Ct. at 911–12. As noted, *supra,* the wholesalers to which Kable did not grant the excess discounts form an identifiable class that could collect similar damages. The risk of double recovery, therefore, is quite high.

Official contends that this court should broadly interpret the scope of compensable antitrust injuries. Official relies on language in *McCready* which states that Section 4 of the Clayton Act:

> "does not confine its protection to consumers, or to purchasers, or to competitors, or to sellers ... The Act is comprehensive in its terms and coverage, protecting all who are made victims of the forbidden practices by whomever they may be perpetrated."

*McCready, supra,* 457 U.S. at 472, 102 S.Ct. at 2545 (quoting *Mandeville Island Farms Inc. v. American Crystal Sugar Co.,* 334 U.S. 219, 236, 68 S.Ct. 996, 1006, 92 L.Ed. 1328 (1948)). Official argues that it is foreseeable that Kable's price discrimination would affect Official, placing Official in the target area of Kable's allegedly unlawful activities. Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment at 20. Official also attempts to distinguish *Associated General* on the grounds that it focused on a labor dispute and that it quoted extensively from cases which liberally interpreted antitrust injury. Plaintiff's Memorandum at 21–22.

*McCready* does interpret § 4 in an expansive manner. *McCready, supra,* 457 U.S. at 472–73, 102 S.Ct. at 2544–45. Nonetheless, *McCready* also clearly states that a plaintiff must do more than simply prove damages causally linked to an illegal presence in the market. *McCready,* 457 U.S. at 482, 102 S.Ct. at 2550. Official, however, has not even alleged that Kable had an illegal presence in any market; rather, Official claims it was injured only insofar as the distribution agreements were breached. Moreover, there is no language in *Associated General* which expressly or implicitly states that its holding applies only to disputes between employers and employees. Finally, the fact that the *Associated General* Court considered and rejected the 'liberal' cases, weighs against Official's request for a broad interpretation of standing to sue under the Robinson–Patman Act.

### c. RICO

The twelfth claim in the amended complaint seeks to recover civil damages under RICO, 18 U.S.C. § 1961 *et seq.,* for allegedly fraudulent concealment of discounts that Kable granted to certain wholesalers in violation of the distribution agreements. A viable civil RICO claim requires Official to allege that the defendants committed two or more predicate acts within a ten year period and that such acts constituted a pattern of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 495–96, 105 S.Ct. 3275, 3284–85, 87 L.Ed.2d 346 (1985). Official alleges multiple violations of the Mail Fraud Act, 18 U.S.C. § 1341, and the Wire Fraud Act, 18 U.S.C. § 1343.

The defendants contend that the twelfth claim fails to plead a RICO violation with the particularity required by Federal Rule of Civil Procedure 9(b). Defendants maintain that the RICO claim merely attaches conclusory language, such as "scheme and artifice to defraud," to Official's breach of contract and Robinson–Patman Act allegations. Kable also asserts that Official has

not stated a viable claim against it because Kable cannot be both the RICO "person" and "enterprise." Defendants have also asked this court to deny Official leave to amend the amended complaint because Official has already had one opportunity to amend after discovery was completed.

**1. Federal Rule of Civil Procedure 9(b)**

Federal Rule of Civil Procedure 9(b) states in relevant part: "[I]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." Rule 9(b) ensures that each defendant is provided with reasonable detail regarding his particular involvement in an alleged fraud and receives specific information that enables him to respond adequately to the charges. *See Equitable Life Assur. Soc. v. Alexander Grant Co.*, 627 F.Supp. 1023, 1029 (S.D.N.Y.1985); *Crystal v. Foy*, 562 F.Supp. 422, 424 (S.D.N.Y.1983).

■ Rule 9(b)'s particularity requirement applies to allegations of mail fraud and wire fraud in civil RICO claims. *Haroco v. American Nat. Bank*, 747 F.2d 384, 405 (7th Cir.1984), *aff'd on other grounds*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985); *Rich–Taubman Associates v. Stamford Restaurant Operating Co., Inc.*, 587 F.Supp. 875, 888 (S.D.N.Y.1984). In alleging mail fraud, the plaintiff must set forth the contents of the items mailed and specify how each of these items was false and misleading. *Gross v. Diversified Mortgage Industries*, 438 F.Supp. 190 (S.D. N.Y.1977). The plaintiff must specify who made the allegedly fraudulent statements and the time and place such statements were made. *Conan Properties, Inc. v. Mattel, Inc.*, 619 F.Supp. 1167 (S.D.N.Y. 1985). Allegations that do not specify the time, place, speaker or content of the allegedly fraudulent statements do not satisfy the particularity requirement of Rule 9(b). *Denny v. Barber*, 576 F.2d 465, 469 (2d Cir.1978).

■ A careful reading of the amended complaint indicates that Official's civil RICO claim does not satisfy the particularity requirement of Rule 9(b). Paragraphs 73 and 74 of the amended complaint allege,

without elaboration, that Kable employed "fraudulent and unlawful devices," committed "fraudulent and criminal acts" and engaged in a "fraudulent, unlawful plan and conspiracy" to divert funds from Official to Kable. These generalities and conclusions do not satisfy Rule 9(b). *Decker v. Massey–Ferguson*, 681 F.2d 111, 115 (2d Cir.1982).

The party alleging fraud should specify the agreements or the amounts involved in the alleged misrepresentation. *Felton v. Walston*, 508 F.2d 577, 581 (2d Cir.1974); *Weinberger v. Kendrick*, 451 F.Supp. 79, 81–82 (S.D.N.Y.1978); *Jacobson v. Peat, Marwick, Mitchell & Co.*, 445 F.Supp. 518 (S.D.N.Y.1977). Paragraph 75, subparagraphs (a) – (h), ¶ 76 and ¶ 77 purport to set forth the fraudulent activities Official claims violate the Mail Fraud Act and the Wire Fraud Act. The only specific allegation in ¶ 75(a) is that on March 31, 1984 and at other times, the defendants gave Hudson County News Dealer Supply of North Bergen, N.J., a rate discount greater than the 40% offered to other Kable wholesale customers. Nevertheless, Official does not specify how much the excess discount to Hudson was, nor which agreement the discount violated.

This lack of particularity is especially problematic in light of the 1969 distribution agreement. The 1969 agreement provided that Kable had the right to grant excess discounts of 4% to wholesalers in several regions, including Bergen County, N.J. Clearly, without specifying the amount of the alleged discounts or which agreements were violated, the defendants are not apprised as to the source of any fraud. Thus, the allegations of Paragraph 75(a) do not satisfy Rule 9(b).

Paragraph 75(b) makes similarly unspecific allegations regarding Kable's dealings with a wholesaler in Cleveland. It is also not sufficient under Rule 9(b) to allege that a "scheme" was effected through the dissemination of "false and fraudulent statements" (¶ 75(e)), "false and fraudulent letters and other matters and things, including, but not limited to, various statements, order forms, shipping documents and com-

munications" (¶ 76), or "numerous false and fraudulent telephone calls" and "other wire communications" (¶ 77).

Allegations that merely attach conclusory language, such as "scheme or artifice to defraud" or "obtain money by means of false and fraudulent practices" to other claims do not satisfy Rule 9(b). *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir.1972). For the most part, Official's civil RICO claim merely attaches such conclusory language to claims previously set forth in the amended complaint. For example, ¶ 75(c) alleges that:

> On various occasions during the period involved, the defendants through the use of the U.S. mails, telephone and other sources of interstate wire communication and transportation facilities did engage in a scheme or artifice to defraud or to obtain money by means of false and fraudulent practices by providing certain of its select customers with "return allowances" which exceeded the contract limits and which violated the terms of the agreements. Said improper "return allowances", resulted in substantial damage to the plaintiff.

Thus, ¶ 75(c) merely summarizes Official's breach of contract claims—"exceeded the contract limits and violated the terms of the agreements"—and engrafts conclusory allegations of fraud to those claims. Paragraph 75(c) also does not specify the time of defendants' allegedly fraudulent statements, alleging only that such statements were made "on various occasions." Paragraph 75(d) similarly couches Official's Robinson–Patman Act claims in conclusory RICO language.

Official's RICO claim also fails to specify each defendant's role in the alleged fraud. Allegations of fraud that refer only to the "defendants," without connecting particular misrepresentations to particular defendants, fail to satisfy the particularity requirements of Rule 9(b). *Denny, supra,* 576 F.2d at 469; *Segal, supra,* 467 F.2d at 608. The amended complaint contains no references to a particular defendant or his particular involvement in any act constituting mail fraud or wire fraud. The com-plaint only alleges that Holpp and Friedman are officers at Kable. In fact, Holpp's name does not even appear in the lone affidavit submitted by Official. Official also does not allege a single misrepresentation on the part of Friedman or identify any letter, telephone call, or other wire communication from Friedman conveyed in furtherance of any fraud. Moreover, Official has failed to identify the manner in which any particular statements or omissions by Holpp and Friedman were fraudulent. Therefore, Official's amended complaint does not satisfy the particularity requirement Rule 9(b).

### 2. RICO Allegations Against Defendant Kable

■ Defendants properly maintain that Official, as a matter of law, has not pleaded a viable RICO claim against Kable. RICO, 18 U.S.C. § 1962, prohibits "persons" from using an "enterprise" for racketeering purposes. A RICO person includes "any individual or entity capable of holding a legal interest in property." 18 U.S.C. § 1961(3). A RICO enterprise is "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S. C. § 1961(4).

This Circuit interprets such language to mean that the RICO "person" is different from the RICO "enterprise". In *Bennett v. United States Trust Co. of New York*, 770 F.2d 308, 315 (2d Cir.1985), *cert. denied*, 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776, the court held that a complaint which failed to differentiate between the RICO person and enterprise was properly dismissed. The court stated that a distinction between the RICO enterprise and person conforms with legislative intent and policy and recognizes that "the enterprise itself is often a passive instrument or victim of the racketeering activity." *Id.*

Paragraph 80 alleges that "the individual defendants have conducted and participated in the conduct of the affairs and interstate activities of Kable through the pattern of 'racketeering activity' herein-

before alleged in violation of 18 U.S.C. § 1962(c)." Paragraph 82 then states that these violations should result in civil liability on the part of "each and all defendants herein, jointly and severally." The plain language of the amended complaint indicates that Official considers Kable to be both the RICO person and enterprise. Therefore, Official has not stated a viable RICO claim against defendant Kable.

### 3. Leave to Amend

■ Finally, there is the question of whether Official should again be granted leave to amend. Federal Rule of Civil Procedure 15(a) states that leave to amend a deficient complaint "shall be freely given as justice so requires." In *Billard v. Rockwell International Corp.*, 683 F.2d 51, 57 (2d Cir.1982), however, the Second Circuit denied leave to amend a complaint that alleged fraud under the Securities Exchange Act of 1934 which, after full discovery in a related case, failed to meet the Rule 9(b) particularity requirement. The court recognized the value of Rule 9(b), which protects defendants from harm to their reputations resulting from baseless fraud claims and provides notice of the precise conduct that the plaintiff claims is fraudulent. *Billard, supra,* 683 F.2d at 57. The court stated that "[t]he policies underlying Rule 9(b) call upon us to require greater precision than is found in this complaint when full discovery has been had in a prior case." *Id.* Although the plaintiffs in *Billard* supplemented the record with materials developed through discovery in a prior case, they failed to produce any supporting detail for their allegations of fraud. *Id.* The court, therefore, denied Billard leave to amend.

Official did not complete full discovery before amending its complaint; however, discovery was completed before defendants filed this motion to dismiss. Official submitted a memorandum of law and affidavits in opposition to defendants' motion, but these papers do not supplement the amended complaint so as to satisfy Rule 9(b). They contain no mention of any fraudulent mail or wire communication

from Friedman, and Holpp's name is conspicuously absent from the affidavit.

Further, this court cannot conceive, given the facts alleged, how repleading the amended complaint could create a viable RICO claim. Official contends that the parties entered into an agreement in 1961 which never varied, that Daniel Friedman changed Kable's method of granting discounts in 1974, and that the settlement statements did not reflect this change. Official never says that Kable misinformed it about the discounts being granted; in fact, Official expressly states that special discounts were never discussed after 1961. Fredericks Affidavit, ¶ 7; Herbert Affidavit, ¶ 4–5.

Official had access to all facts needed to allege fraud with the particularity required by Rule 9(b) by the time defendants filed their motion to dismiss. Since Official has not satisfied Rule 9(b), leave to amend will not be granted.

### III. Costs and Attorneys Fees

Federal Rule of Civil Procedure 11 states in relevant part:

> The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion or other paper; that to the best of the signer's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in cost of litigation.

■ Since Rule 11 was amended in 1983, this Circuit has required more careful investigation and consideration of Rule 11 claims. *Oliveri v. Thompson,* 803 F.2d 1265 (2d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1372, 94 L.Ed.2d 689 (1987). Rule 11 sanctions have been imposed where plaintiffs' claims had absolutely no chance of success under existing precedents and advanced no reasonable argument to extend, modify or reverse existing law. *Norris v. Grosvenor Marketing, Ltd.,* 803 F.2d 1281 (2d Cir.1986). Courts can also impose sanctions where plaintiff's claim is friv-

**248**

olous. *See Gilmore v. Shearson/American Express*, 811 F.2d 108 (2d Cir.1987); *Fried v. Fried*, 113 F.R.D. 103 (S.D.N.Y. 1986).

Plaintiff's claims must be dismissed because they are not grounded in fact or warranted by existing law. There is no legal basis for continuing to claim diversity jurisdiction after discovery in this action. As to plaintiff's antitrust claims, it is untenable to attempt to distinguish clear Supreme Court precedent that limits severely the scope of compensable antitrust injury. Finally, the law of particularity in fraud pleadings is far from novel or in dispute. Rule 11 is not designed to stifle completely an attorney's creativity. Nevertheless, if sanctions are not imposed when groundless claims that consume the resources of both the court and the parties are asserted in federal court, then Rule 11 becomes a paper tiger. Accordingly, the court is impelled to impose Rule 11 sanctions. An appropriate sanction in this case is the defendants' costs in connection with the instant motion. Defendants are to submit an affidavit as to its attorney's fees in connection with the preparation of the instant motion.

### IV. Summary

It appears that Official has made a painstaking effort to convert simple breach of contract and common-law fraud claims into complex Robinson–Patman Act and civil RICO causes of action. For example, Official refers to certain clauses in the distribution agreements as "ambiguous," while the defendants view these same terms as "clear and concise." Conflicts over contractual breach and interpretation do not fall within the purview of the antitrust laws, RICO, the Mail Fraud Act, or the Wire Fraud Act. Also, there is not complete diversity between plaintiff and defendants. Accordingly, this court does not have subject matter jurisdiction, either under the doctrine of federal question or diversity, over this controversy.

### Conclusion

Defendant's motion to dismiss for lack of subject matter jurisdiction is granted. Motion for sanctions pursuant to Federal Rule of Civil Procedure 11 is granted. Defendants are to submit judgment.

SO ORDERED.