884 F.2d 664
 1989-2 Trade Cases 68,742, 14 Fed.R.Serv.3d 1156,
RICO Bus.Disp.Guide 7305
 OFFICIAL PUBLICATIONS, INC., Plaintiff-Appellant,
Barry I. Fredericks, Esq. and Certilman, Balin, Adler &
Hyman, the successor firm of Certilman, Haft,
Lebow, Balin, Buckley & Kremer, Appellants,
v.
KABLE NEWS CO. and Daniel Friedman and Alfred W. Holpp, Jr.,
Defendants-Appellees.
 No. 1145, Docket 89-7128.
 United States Court of Appeals,
Second Circuit.
 Argued May 17, 1989.
Decided Aug. 30, 1989.
 
 Barry I. Fredericks, Englewood Cliffs, N.J., for plaintiff-appellant and pro se.
 David I. Rosenberg, East Meadow, N.Y. (Certilman, Balin, Adler & Hyman, East Meadow, N.Y., of counsel), pro se.
 I. Michael Bayda, New York City (Jacobs Persinger & Parker, New York City, of counsel), for defendants-appellees.
 Before PRATT and ALTIMARI, Circuit Judges, and RAGGI, District Judge.*
 ALTIMARI, Circuit Judge:
 
 
 1
 Plaintiff-appellant Official Publications, Inc. ("Official") appeals from a judgment of the United States District Court for the Southern District of New York (Edelstein, J.), which dismissed its action against defendant-appellee Kable News Co. ("Kable"), denied its motion to replead a RICO claim, and imposed sanctions. Official brought the underlying action charging Kable with violations of RICO, the Robinson-Patman Act, and pendent state law claims. The district court granted Kable's motion for summary judgment having found, inter alia, there was no diversity jurisdiction, plaintiff lacked standing to sue under the Robinson-Patman Act, and plaintiff's allegation of a RICO violation had not been pleaded with the specificity required by Fed.R.Civ.P. 9(b). Official Publications, Inc. v. Kable News Co., 692 F.Supp. 239 (S.D.N.Y.1988). On this appeal, Official concedes it made certain pleading errors, but contends it stated colorable Robinson-Patman and RICO claims. Official further contends it should have been given an opportunity to cure the purported Rule 9(b) defect. Along with attorney Barry I. Fredericks, plaintiff argues that the complaint was sufficiently grounded in law and fact to preclude the imposition of sanctions. The law firm of Certilman, Balin, Adler & Hyman ("Certilman") asserts that exceptional circumstances exist that militate against holding it responsible for sanctions imposed on Official and Fredericks.
 
 
 2
 The judgment of the district court is affirmed with respect to dismissal of plaintiff's RICO and Robinson-Patman Act claims. However, because we find plaintiff should have been permitted to replead its RICO claim, and because sanctions were not warranted on the facts of this case, we reverse the judgment of the district court with respect to these issues and remand for further proceedings.
 
 I. BACKGROUND
 
 3
 We will summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal. We assume the reader's familiarity with the district court's opinion, referred to above.
 
 A. Distribution Agreements
 
 4
 At issue in this dispute are two distribution agreements, dated 1974 and 1980, between Official and Kable. Beginning in 1961, Kable contracted to act as sole nationwide distributor of Official's magazines. As distributor, Kable purchased magazines from Official for resale to its own customers, who are wholesalers located throughout the United States and abroad. Under the agreement, Kable was entitled to grant some of its wholesale customers various credits and discounts, collectively known as "special allowances." Special allowances were granted to certain wholesalers who purchased Official's magazines from Kable where warranted by the wholesalers' high transportation and/or labor costs. Official was contractually obligated to reimburse Kable for its special allowance expenditures.
 
 
 5
 Early versions of the agreement contained clauses that expressly stated the amounts of special allowances that Kable was entitled to grant to its wholesalers. In addition, the agreements specified the geographical locations where special allowance programs could be undertaken. The 1974 and 1980 agreements, as amended, provided that Official was to "reimburse [Kable] for any and all allowances made by [Kable] to any of its sales outlets in locations where special labor conditions and/or other situations and conditions causing such allowances exist." 1974, 1980 Kable News Co. Distribution Contract paragraphs l(h), 1(h). There was no clause in the amended agreements detailing the amount of special allowances that Kable was permitted to offer to wholesalers. The contracts did not specify which labor or other special situations would trigger the grant of special allowances. In addition, the agreements omitted the geographical markets where discounts were permitted. Thus, the contracts appeared to permit Kable to grant special allowances in its sole discretion, without limitation, and to charge any and all of the allowances back to Official.
 
 
 6
 In 1983 or early 1984, Official requested that Kable render a settlement statement particularizing its special allowances. In response, Kable sent Official computer printouts detailing by name the wholesalers to whom it granted discounts, the type of discounts given, and the amount of each wholesaler's discount. After receiving the detailed printouts, Official began to suspect that Kable had granted allowances which were not justified by wholesaler transportation or labor costs. Accordingly, Official commenced the underlying action in the Southern District of New York.
 
 B. Complaint and Answer
 
 7
 Official retained Barry I. Fredericks, Esq., a member of the law firm of Goldschmidt, Fredericks & Oshatz, for the purpose of pursuing the litigation. Several months later Fredericks joined the Certilman firm as head of the firm's litigation department. While at Certilman, Fredericks personally supervised the litigation against Kable. With one exception, Fredericks signed all of the papers relevant to the instant appeal.
 
 
 8
 Official's original complaint, filed February 22, 1985, named Kable News Co. as the sole defendant. The complaint pleaded diversity jurisdiction on the basis that Kable was a Delaware corporation having its principal place of business in Mount Morris, Illinois. The complaint also pleaded federal question jurisdiction. As relevant to this appeal, plaintiff alleged that Kable violated Secs. 1(a) and (d) of the Robinson-Patman Price Discrimination Act, 15 U.S.C. Secs. 13(a) and (d) (1982), by offering magazines "of like grade and quality" to some wholesale distributors at lower prices than to others.
 
 
 9
 After some discovery, plaintiff moved for leave to amend its complaint. In addition to asserting a RICO claim, 18 U.S.C. Sec. 1962(c) (1982), the amended complaint named as defendants two of Kable's principal officers, Daniel Friedman and Alfred W. Holpp, Jr. In setting forth the jurisdiction of the court in the amended complaint, Official committed certain pleading errors. First, it alleged the claim "ar[ose] under the provisions of," inter alia, the Mail Fraud Act, 18 U.S.C. Secs. 1341 and 1343 (1982), although the acts do not provide a private right of action. Amended and Supplemental Complaint p 74. Next, Official retained the plea of diversity jurisdiction stated in its original complaint. It neglected, however, to set forth the domiciles of the newly added defendants. At the time the complaint was filed, Friedman was a New York domiciliary and Official was a New York corporation.
 
 C. Motion for Summary Judgment
 
 10
 On May 15, 1986, Kable moved pursuant to Fed.R.Civ.P. 12(c) and 56(b) to dismiss the complaint for failure to state a claim, or alternatively, for summary judgment. Kable also moved for sanctions under Fed.R.Civ.P. 11. More than two years after Kable filed its motion to dismiss, the district court granted the motion. Official Publications, 692 F.Supp. at 248. The court held, inter alia, that diversity jurisdiction was destroyed by the addition of Friedman as a defendant, plaintiff lacked standing under the Clayton Act to recover for the purported antitrust violation, Kable could not be both a "person" and an "enterprise" under RICO, and the RICO fraud allegations were not pleaded with specificity.
 
 
 11
 The court also imposed sanctions of $96,917.95, later reduced to $48,638.61, jointly and severally against Official, Fredericks, and the Certilman firm. The court specifically sanctioned plaintiff's continued assertions of diversity jurisdiction, its "untenable" attempt to distinguish Supreme Court precedent limiting antitrust standing, and its violation of Fed.R.Civ.P. 9(b). Following the court's refusal to reconsider its ruling on sanctions and dismissal of the RICO claim, Official, Fredericks, and the Certilman firm appealed.
 
 II. DISCUSSION
 A. Dismissal of the Complaint
 
 12
 Official contends the district court erred by dismissing its Robinson-Patman claim on grounds that it lacked standing to sue. Appellant also contends the amended complaint provided enough detail for defendants to frame a responsive pleading. Finally, Official argues it should have been permitted to replead its RICO claim, and sanctions were not warranted.
 
 
 13
 We affirm the district court's dismissal of Official's Robinson-Patman and RICO claims substantially for the reasons set forth in its opinion. Our only addition to the court's thoughtful analysis is to stress that Official has not stated an antitrust injury on the record before us. Official would suffer the loss of profits referred to in its complaint regardless of whether Kable offered the discounts to all its wholesale customers, or only to some of them. (In fact, Official would have suffered even greater damages had the discounts been offered to all wholesalers). Therefore, Official's damages do not arise from discrepancies in the discounts given to wholesalers, that is, from Kable's discrimination among favored and disfavored wholesalers. Rather, its alleged damages arose when Kable granted any improper discounts, that is, from Kable's breach of contract.
 
 
 14
 We have already held that price discrimination is not illegal per se under the Robinson-Patman Act. See Best Brands Beverage, Inc. v. Falstaff Brewing Corp., 842 F.2d 578, 584 (2d Cir.1987). In order to show antitrust injury under the Robinson-Patman Act, a party must prove a causal connection between price discrimination and the injury it claims to have suffered. See Perkins v. Standard Oil Co., 395 U.S. 642, 648, 89 S.Ct. 1871, 1874, 23 L.Ed.2d 599 (1969). In the instant case, Official was unable to set forth a sufficient causal connection. Accordingly, we hold that Kable was entitled to summary judgment on the Robinson-Patman claim as a matter of law.
 
 B. Leave to Replead--RICO Claim
 
 15
 A reading of the amended complaint and accompanying submissions leads us to conclude that plaintiff's RICO claim is at least potentially viable. Reduced to its essentials, the amended complaint states that pursuant to a longstanding contract, over a considerable period of time, Official received billing statements mailed by Kable which contained concealed charges, and Official paid the charges. Such repeated mailings may in fact constitute participation in the conduct of the affairs of an enterprise through a pattern of racketeering activity. See H.J. Inc. v. Northwestern Bell Telephone Co., --- U.S. ----, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); Beauford v. Helmsley, 865 F.2d 1386 (2d Cir.) (in banc), vacated and remanded on other grounds, --- U.S. ----, 109 S.Ct. 3236, 106 L.Ed.2d 584 (1989). The district court dismissed the RICO claims against the individual defendants because the allegations of fraud underlying the RICO predicate acts were not set forth with sufficient particularity. As indicated below, we think plaintiff should be permitted to replead the claims.
 
 
 16
 The district court also determined that no claim whatsoever could be stated against Kable under 18 U.S.C. Sec. 1962, reasoning that Kable could not be both a "person" and an "enterprise" within the meaning of RICO. We agree with the determination of the district court as it relates to a claim pursuant to Sec. 1962(c). See Bennett v. United States Trust Co., 770 F.2d 308, 315 (2d Cir.1985), cert denied, 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986). However, we do not believe that the same result necessarily obtains under Sec. 1962(a).
 
 
 17
 In Bennett, a case arising under Sec. 1962(c), we cited numerous cases in connection with the proposition that a corporation cannot be both the enterprise and the person. Id. Two of these cases, B.F. Hirsch v. Enright Refining Co., 751 F.2d 628, 634 (3d Cir.1984), and Haroco, Inc. v. American Nat'l Bank & Trust Co., 747 F.2d 384, 401-02 (7th Cir.), aff'd on other grounds, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985), tend affirmatively to support the idea that under Sec. 1962(a) a defendant may also be the enterprise. Hirsch remanded to determine if there could be liability under Sec. 1962(a), 751 F.2d at 634, and Haroco asserted the difference between subdivisions (a) and (c) in dicta, 747 F.2d at 401-02. That there is a distinction between the subdivisions is readily apparent from both the language of the statute itself and its legislative history. Moreover, the distinction has been observed by every court which has attempted to analyze the problem in any detail. See, e.g., Schreiber Distributing Co. v. Serv-well Furniture Co., 806 F.2d 1393, 1398 (9th Cir.1986); Schofield v. First Commodity Corp., 793 F.2d 28, 32 (1st Cir.1986); Masi v. Ford City Bank & Trust Co., 779 F.2d 397, 401-02 (7th Cir.1985). Thus, under Sec. 1962(a), it may be possible for a defendant to also be the enterprise.
 
 
 18
 In sum, the district court was correct in dismissing outright the claims against Kable insofar as they were based on Sec. 1962(c). Although we suggest the same conclusion would follow, for similar reasons, with respect to a claim against Kable based on Sec. 1962(b), on the complaint before us we cannot make that distinction. It is conceivable, however, that Official could develop a viable claim under Sec. 1962(a). In any event, this issue cannot be determined absent a well-pleaded complaint.
 
 
 19
 Fed.R.Civ.P. 15(a) states that leave to amend a complaint "shall be freely given when justice so requires." If this were a case wherein plaintiff repeatedly failed to conform to the requirements of Rule 9(b), we would not hesitate to affirm the dismissal of the complaint. See Armstrong v. McAlpin, 699 F.2d 79, 93-94 (2d Cir.1983); Decker v. Massey-Ferguson, Ltd, 681 F.2d 111, 115 (2d Cir.1982). In a case such as this, however, where the plaintiff has amended a complaint to state newly added claims but has not yet had a chance to replead fraud with greater specificity, we will permit repleading. See Devaney v. Chester, 813 F.2d 566, 569 (2d Cir.1987); cf. Pross v. Katz, 784 F.2d 455, 459 (2d Cir.1986) (where complaint is deficient under Rule 9(b), leave to amend is "usually afforded"). Accordingly, we reverse that portion of the district court's determination which denied leave to further amend the complaint.
 
 C. Rule 11 Sanctions
 
 20
 Finally, we are not persuaded that Official should have been sanctioned on the facts of this case. Fed.R.Civ.P. 11, as amended, requires that "[e]very pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record." The Rule specifies that the signature "constitutes a certificate ... that the signer has read the pleading ... [and that] to the best of the signer's knowledge, information, and belief formed after reasonable inquiry [the pleading] is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Id. An attorney's obligation under Rule 11 is to be judged as of the time the offending paper was signed, Oliveri v. Thompson, 803 F.2d 1265, 1274 (2d Cir.1986), cert. denied, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987), and all doubts are to be resolved in favor of the signer. Id. at 1275. Because sanctions are mandatory for violations of the Rule, we review de novo the question of whether the Rule was violated in the first instance.[1]
 
 1. Robinson-Patman claim
 
 21
 In the instant case, the court characterized as "untenable" Official's attempt to distinguish "clear Supreme Court precedent that limits severely the scope of compensable antitrust injury." Official Publications, 692 F.Supp. at 248. Although cases alleging seller liability for downstream price discrimination in a distribution arrangement are quite common, see, e.g., Jefferson County Pharmaceutical Ass'n v. Abbott Laboratories, 460 U.S. 150, 152, 103 S.Ct. 1011, 1013, 74 L.Ed.2d 882 (1983); Falls City Indus., Inc. v. Vanco Beverage, Inc., 460 U.S. 428, 431-33, 103 S.Ct. 1282, 1286-87, 75 L.Ed.2d 174 (1983); Best Brands, 842 F.2d at 581-583, plaintiff has alleged an unusual set of facts here. A relatively rare case is presented by the contractual "pass-along" feature, which permitted Kable to pass the cost of discounts to its wholesale customers upstream to Official. The Supreme Court has cautioned that, with respect to judicial recognition of antitrust claims, "the infinite variety of claims that may arise make it virtually impossible to announce a black letter rule that will dictate the result in every case." Associated Gen. Contractors v. California State Council of Carpenters, 459 U.S. 519, 536, 103 S.Ct. 897, 908, 74 L.Ed.2d 723 (1983). As we have stated previously, Rule 11 is violated when it is patently clear that a claim has absolutely no chance of success. Calloway, 854 F.2d at 1470; Stern, 844 F.2d at 1005; Eastway I, 762 F.2d at 254; cf. Creative Bath Prod., 837 F.2d at 564 (sanctions not warranted where judicial route "may not have been the clearest and most predictable"). Given the unique set of facts alleged, we think the question of whether a seller in Official's position was a proper party to bring the instant action was not so clear as to render the claim frivolous within the meaning of Fed.R.Civ.P. 11.
 
 2. RICO claim
 
 22
 We have held that Official should be permitted to amend its pleading in conformity with Rule 9(b). Accordingly, we think sanctions for plaintiff's failure to state the circumstances constituting fraud with particularity are inappropriate at this juncture. We note in passing that in pleading mail and wire fraud under the complaint's jurisdictional heading, Official appears to have intended only to plead the statutes as RICO predicates, and not as independent causes of action. In any event, the district court is free to review the entire pleading after plaintiff submits its second amended complaint. Cf. Stern, 844 F.2d at 1005 (where party is given leave to replead, court should focus on whether new allegations meet standards of Rule 11).
 
 3. Diversity pleading
 
 23
 Our reversal of the sanctions imposed by the district court should not be taken to mean we condone the egregious pleading errors committed by plaintiff's counsel. At the very least, plaintiff's counsel should have been aware that diversity was destroyed by the addition of Friedman as a defendant. Ironically, however, the record suggests defendants' counsel also did not detect the error. Rather, the parties' arguments for and against diversity jurisdiction focused on whether Kable's principle place of business was in New York. Since Kable apparently did not address itself to the offending portion of Official's pleading, we see no reason to compensate for it. See Greenberg, 870 F.2d at 935; Oliveri, 803 F.2d at 1280. Under the circumstances presented here, we do not think monetary sanctions should be imposed.
 
 III. CONCLUSION
 
 24
 For all the foregoing reasons we affirm the dismissal of plaintiff's Robinson-Patman and RICO claims. However, we reverse that part of the judgment of the district court which denied leave to replead plaintiff's RICO claim and imposed sanctions, and remand for further proceedings.
 
 
 
 *
 The Honorable Reena Raggi, United States District Court for the Eastern District of New York, sitting by designation
 
 
 [1]
 Our decisions are less than clear in explicating the precise standard to be employed by appellate courts when reviewing Rule 11 decisions. A survey of the relevant cases reveals a two- or three-tiered standard of review. Authority for de novo review rests on a footnote in Eastway Constr. Corp. v. City of New York, 762 F.2d 243, 254 n. 7 (2nd Cir.1985) ("Eastway I ") ("[w]here the only question on appeal becomes whether, in fact, a pleading was groundless, we are in as good a position to determine the answer and ... need not defer to the lower court's opinion"), cert. denied, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). See also Greenberg v. Hilton Int'l Co., 870 F.2d 926, 934 (2d Cir.1989); Calloway v. Marvel Entertainment Group, 854 F.2d 1452, 1470 (2d Cir.1988), cert. granted, --- U.S. ----, 109 S.Ct. 1116, 103 L.Ed.2d 179 (1989). In addition, Calloway states that "factual findings underlying the imposition of sanctions are reviewed under the clearly erroneous standard." 854 F.2d at 1470 (citing Fed.R.Civ.P. 52(a)). Finally, several of our decisions review the amount and nature of any sanctions imposed under the abuse of discretion standard. See Stern v. Leucadia Nat'l Corp., 844 F.2d 997, 1004 (2d Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988); City of Yonkers v. Otis Elevator Co., 844 F.2d 42, 49-50 (2d Cir.1988); Eastway Constr. Corp. v. City of New York, 821 F.2d 121, 122 (2d Cir.) ("Eastway II" ), cert. denied, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). But see Creative Bath Prod., Inc. v. Connecticut Gen. Life Ins. Co., 837 F.2d 561, 564 (2d Cir.1988) (reviewing denial of sanctions under abuse of discretion standard), cert. denied, --- U.S. ----, 109 S.Ct. 3241, 106 L.Ed.2d 588 (1989)
 In the instant case, the district court's decision to impose sanctions was grounded on its determination that, as a matter of law, plaintiff could not have a good faith basis for asserting its claims. Accordingly, we review the court's decision de novo.